[Cite as *Greater Cleveland Metroparks v. Ismail*, 2017-Ohio-5570.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104412**

# GREATER CLEVELAND METROPARKS

PLAINTIFF-APPELLEE

vs.

# THERESA A. ISMAIL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Parma Municipal Court
Case No. 15 TRD 10936

**BEFORE:** Jones, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 29, 2017

**ATTORNEY FOR APPELLANT**

Christina Brueck
Brueck Law Firm
333 Babbit Road, Suite 301
Euclid, Ohio 44123


**ATTORNEYS FOR APPELLEE**

Anne Eisenhower
Cleveland Metroparks
4600 Valley Parkway
Fairview Park, Ohio 44126

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Theresa Ismail appeals her speeding conviction, which was rendered in the Parma Municipal Court after a bench trial. We affirm.

{¶2} At trial, plaintiff-appellee Greater Cleveland Metroparks ("Metroparks") presented the testimony of Julie Dollard ("Ranger Dollard"), the ranger who issued a speeding ticket to Ismail. Ranger Dollard testified that on the date of the incident she was pulled over on a "pull off" between State Road and Broadview Road in the Brecksville Reservation portion of the Metroparks. Her ranger vehicle was stationary and she was "running the radar," which was a "Python Series II." The posted speed limit in that portion of the Metroparks was 30 m.p.h.

{¶3} Ranger Dollard testified that she saw the car being driven by Ismail and visually estimated that it was going over 50 m.p.h. She then clocked the speed with the radar; the car was traveling at 56 m.p.h. The ranger pulled Ismail over and issued her a speeding ticket. The citation stated that the car was going 47 m.p.h., which Ranger Dollard testified was the speed Ismail slowed down to.

{¶4} Ranger Dollard testified that she had been trained in running radar, and that the training entailed classroom course work, field training, and an examination. The field training included doing visual estimations of a car's speed, which would then be compared to the speed as recorded by the radar for accuracy determinations. Upon completion of the training, the ranger was certified as a radar operator. Her certificate of completion was entered into evidence.

**{¶5}** Further, the ranger testified that she conducted a "tuning test" prior to the start of her shift on the day in question, and after each ticket that she issued. The test confirmed that the radar was calibrated. She also testified as to the last time the radar was calibrated, and the certificate demonstrating that calibration was entered into evidence.

**{¶6}** Ismail also testified. According to Ismail, Ranger Dollard was following her as she was driving less than 25 m.p.h., and then pulled her over. Ismail asked the ranger to see her radar device, to which Ranger Dollard responded, "no, I don't need radar." Ismail testified that she was looking at her speedometer the entire time, and so the speeds the ranger clocked her at and cited her for were "impossible," because at the most, she was going approximately 32 m.p.h. She told the court that she drives that way numerous times a day and never exceeds 32 m.p.h.

**{¶7}** On this evidence, the trial court found Ismail guilty of speeding. The court imposed a $100 fine, with $50 suspended, and court costs. The sentence was stayed pending this appeal, in which Ismail raises the following assignment of error for our review: "The trial court erred in finding that the evidence presented at trial was sufficient to find the defendant-appellant guilty of speeding."

**{¶8}** Ismail raises two issues in this appeal: (1) the reliability of the radar device and (2) the admissibility of Ranger Dollard's visual-estimation testimony, which we consider in turn.

**The Reliability of the Radar Device**

{¶9} Ismail contends that the radar device measurement was insufficient without expert testimony establishing its reliability.[1]   We disagree.

{¶10} In order to convict Ismail of speeding, Metroparks was required to show that (1) the radar device's speed measurements were reliable, (2) the specific radar unit was in good working condition, and (3) Ranger Dollard was qualified to use the radar device. *E. Cleveland v. Ferell*, 168 Ohio St. 298, 301, 154 N.E.2d 630 (1958).

{¶11} In *Ferell*, the Ohio Supreme Court considered whether evidence of speed obtained from a radar speed meter was insufficient evidence to sustain a speeding conviction when there was no expert testimony at trial regarding the meter's construction and method of operation.   The court held no, stating that "readings of a radar speed meter may be accepted in evidence, just as we accept photographs, x-rays, electroencephalographs, speedometer readings, and the like, without the necessity of offering expert testimony as to the scientific principles underlying them."   *Id.* at 303. Thus, "[t]here remains, then, only a determination as to the sufficiency of the evidence concerning the accuracy of the particular speed meter involved * * * and the qualifications of the person using it."   *Id.*

{¶12} Some appellate courts, however, have held that *Ferell's* holding is limited to

---

[1]In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction.   *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence).   Further, the "testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. Franklin No. 09AP-874, 2011-Ohio-1024, ¶ 42.

stationary radar devices, as opposed to moving radar devices. For example, in *State v. Wilcox*, 40 Ohio App.2d 380, 319 N.E.2d 615 (10th Dist.1974), the Tenth Appellate District, after acknowledging *Ferell*, held as follows:

> However, we feel that a defendant may not be convicted of speeding solely upon evidence obtained from a radar speed meter device mounted in *a moving patrol car* in the absence of expert testimony with respect to the construction of the device and its method of operation with respect to its ability to differentiate the speed of a vehicle approaching the moving patrol car from the opposite direction from the combined speed at which they are moving toward each other.

(Emphasis added.) *Wilcox* at 384.

{¶13} Citing *Wilcox*, Ismail contends that her conviction was not supported by sufficient evidence because Metroparks did not present expert testimony to establish the radar's reliability. According to Ismail, Ranger Dollard clocked her speed while the ranger was moving in her vehicle. Ismail further relies on *State v. Everett*, 3d Dist. Wyandot No. 16-09-10, 2009-Ohio-6714, in support of her contention. In *Everett*, a state trooper used the same radar model — the Python Series II — that Ranger Dollard used here. Both law enforcement officials in *Wilcox* and *Everett* were in moving vehicles at the time they operated their radar devices.

{¶14} Here, however, Ranger Dollard testified that she was stationary, not moving, when she clocked Ismail's speed. Although Ismail testified otherwise, Metroparks presented evidence that, if believed, was sufficient to support the conviction as to the radar's reliability needed for a speeding conviction. Thus, *Wilcox* and *Everett* are both distinguishable from this case.

{¶15} The "good working condition" requirement was satisfied by Ranger Dollard's testimony that she checked the calibration on the device at the beginning of her shift and after each ticket she wrote to ensure that it was functioning properly. Metroparks also presented sufficient evidence as to the third element of speeding — that Ranger Dollard was qualified to use the device. Specifically, the ranger testified that she was certified to use that particular radar, and her certification was entered into evidence.

{¶16} On this record, Metroparks presented sufficient evidence to sustain Ismail's speeding conviction.

**Visual-Estimation Testimony**

{¶17} Ismail also contends that, because Metroparks did not present sufficient evidence relative to the radar, and a speeding conviction based on visual estimation is insufficient, her conviction should be overturned. She is correct that the law in Ohio currently provides that visual estimation alone is insufficient evidence to sustain a speeding conviction. *See* R.C. 4511.091(C)(1).[2] But as discussed, this case did not turn solely on visual estimation. Rather, Metroparks presented sufficient evidence that Ismail was speeding through testimony relating to the radar that clocked her speed.

{¶18} In light of the above, there is no merit to Ismail's assignment of error and it is overruled.

---

[2]"No person shall be arrested, charged, or convicted of a violation of any provision of divisions (B) to (O) of section 4511.21 or section 4511.211 of the Revised Code or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar." R.C. 4511.091(C)(1).

**{¶19}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MELODY J. STEWART, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH
SEPARATE OPINION


SEAN C. GALLAGHER, J., CONCURRING:

**{¶20}** I concur fully with the majority decision, but write separately to address my concerns raised nearly ten years ago in *Cleveland v. Tisdale*, 8th Dist. Cuyahoga No. 89877, 2008-Ohio-2807, that our legal analysis of the reliability of speed-measuring devices has fallen far short of the current speed-measuring technology. The lead opinion properly lays out the historical review of reliability and the now decades-old distinguishing factors between stationary and moving radar systems. At this point, all

radar measuring systems have stood the test of time, and the general reliability should be common knowledge to all. Requiring expert testimony for moving systems is absurd. The same can be said for laser devices, which have an even greater level of accuracy and reliability.

{¶21} To think the Supreme Court last weighed in on the reliability question in *E. Cleveland v. Ferell*, 168 Ohio St. 298, 154 N.E.2d 630 (1958), nearly 60 years ago is remarkable.

{¶22} In *Tisdale*, we noted that

> [t]here is a compelling view that the same trust and reliability the Ohio Supreme Court placed in stationary radar devices in *Ferell* should now, 50 years later, be extended to other speed measuring devices that have arguably withstood the test of time. Authority from other states supports the view that the principles of *Ferell* should be extended to other radar and laser speed measuring devices that have stood the test of time in terms of their scientific reliability.

*Id.* at ¶ 15.

KEYWORDS
#104412


Speed; radar reliability; admissibility of testimony. Appellant's conviction for speeding was proper. The park ranger established that she was qualified to operate the radar device; that the device had been properly calibrated before operating it; that the device was in good working condition; and its speed measurements were reliable. Expert testimony to the reliability of the radar device was not required.