**CITY OF SHAKER HEIGHTS, Appellee,**

v.

**COUSTILLAC, Appellant.**

[Cite as *Shaker Hts. v. Coustillac* (2001), 141 Ohio App.3d 349.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77830.

Decided Feb. 26, 2001.

*Rademaker, Matty, McClelland & Greve* and *Thomas F. Greve,* for appellee.
*George R. Wertz,* for appellant.

COLLEEN CONWAY COONEY, Judge.

Defendant-appellant Richard Coustillac appeals from his conviction for a speeding violation entered after a bench trial. He argues that the trial court erred in taking judicial notice of the accuracy and reliability of the Marksman LTI 20–20 laser unit, the trial court erred in finding that the officer's failure to perform the scope-alignment test did not affect the laser's reliability, and that there was insufficient evidence to support his conviction. We find no merit to the appeal and affirm the defendant's conviction.

On July 25, 1999, defendant was issued a citation for traveling north on Interstate 271, near the Chagrin express lanes, at a speed of 81 m.p.h. in a 60

m.p.h. zone. On January 4, 2000, a bench trial was conducted in Shaker Heights Municipal Court. Officer Baumgartner testified that on July 25, 1999, he was conducting a laser detail on Interstate 271, which has a speed limit of 60 m.p.h. He testified that he pointed the laser unit at the defendant's car and received a reading indicating the defendant was traveling at 81 m.p.h. The officer thereafter pulled the defendant over. According to the officer, the defendant admitted to speeding but only admitted to traveling 70 m.p.h. The officer, at the defendant's request, showed him the reading of 81 m.p.h. on the laser, and the officer cited the defendant for excessive speed.

Officer Baumgartner testified that he was certified in operating the Marksman LTI 20–20 laser unit and stated that prior to embarking on the laser detail on July 29, 1999, he properly calibrated the laser unit by performing the delta velocity test to determine whether it was working properly. He calibrated it again after issuing the speeding ticket. The officer admitted, however, that he did not perform the global-alignment or the zero-velocity tests as referenced in the Marksman LTI 20–20 operating manual.

The defendant testified in his own behalf and stated that he was traveling between 60 and 65 m.p.h. when stopped.

Based on the above evidence, the trial court found that the defendant's vehicle was traveling 81 m.p.h. in a 60 m.p.h. zone. The trial court, however, allowed counsel to submit briefs as to the effect of the officer's failure to perform the global-alignment and zero-velocity tests on the laser unit. The trial court reviewed the post-trial brief of appellant and found that the officer's failure to conduct these two tests was not "fatal since a trained, certified officer (in use of the device) found it to be in good working condition." The trial court then entered a finding of guilty and fined the defendant $52 plus court costs.

The defendant appeals, asserting three assignments of error.

"I. The trial court erred to the prejudice of the appellant by taking judicial notice of the accuracy of the LTI 20–20 laser device in the absence of expert testimony with respect to the construction of the device, its method of operation, and its reliability."

Defendant argues that because the trial court never heard expert testimony on the accuracy and reliability of the LTI 20–20 laser unit, it erred in taking judicial notice of the accuracy and dependability of the device.

We note at trial that the defendant never sought to suppress the laser device due to its unreliability and that the defendant never objected to the laser unit on these grounds. The trial court allowed the parties to submit post-trial briefs regarding the effect of the officer's failure to conduct two of the three recommended tests on the unit. The defendant exceeded the scope of the court's

request by also including in his brief the argument that the trial court erred in taking judicial notice of the accuracy and reliability of the laser device. We find that by failing to raise this issue at trial, he waived any error. When the trial court explained what was to be argued in the post-trial briefs, the defendant never raised the issue of the accuracy and reliability of the laser device itself, nor did the court explicitly take judicial notice.

Defendant's first assignment of error is overruled.

"II. The trial court erred to the prejudice of appellant in finding that the officer's failure to perform the scope alignment test on the LTI 20–20 did not affect the dependability or accuracy of the LTI 20–20 laser device."

■ The defendant argues that the trial court erred in accepting the officer's testimony regarding the laser reading when the officer admitted that he had not performed all the possible tests available to determine whether the laser was in good working order.

Officer Baumgartner testified that prior to and after using the laser unit on the date in question, he tested it to ensure that it was working properly. He stated that he performed the delta distance velocity test on the unit several times. On cross-examination, he admitted that he did not perform either the global-alignment test or the zero-velocity test. We find, however, that his failure to perform these tests was not detrimental to the city's case. A reading of the LTI 20–20 operating manual indicates that performing these two tests prior to each use was not the prescribed protocol.

Regarding the zero velocity test, the manual states as follows:

"* * * LTI has designed two passive tests procedures. The two tests are the *fixed distance, zero velocity check* and the *delta distance velocity check*. * * * LTI recommends that one of the tests be performed on the instrument each time it is taken on duty." (Emphasis in original.) (Marksman LTI 20–20 manual at pages 18–19.)

Officer Baumgartner testified that he performed the delta-distance velocity check. Since the manual requires only that either the zero-velocity or delta-distance velocity check be performed, the officer complied with this requirement.

Regarding the global-alignment test, the manual states:

"This test ensures the accuracy of the Marksman's targeting mechanics, and should be performed periodically." (Marksman LTI 20–20 manual at page 6.)

Since the global test needs only to be performed "periodically," it was not necessary for the officer to have conducted the test prior to using the laser. This is especially true when all other indicators demonstrated that the laser was in good working order.

Based on the above, we find that the trial court did not err in accepting the laser reading in spite of the officer's failure to conduct two of the three tests to ensure the accuracy of the laser unit. Defendant's second assignment of error is overruled.

"III. The trial court erred to the prejudice of the appellant by finding that there was sufficient evidence to support a conviction."

██ In his last assignment of error, the defendant argues that there was insufficient evidence that the defendant was speeding because, given his above assignments of error, the laser reading should not have been admitted at trial and the remaining testimony failed to prove the defendant was speeding.

██ As we held in the above two assignments of error, the trial court did not err in relying on the laser reading in determining that the defendant was speeding. Furthermore, the officer testified that the defendant admitted to him at the time of the citation that he was going at least 70 m.p.h. Although the defendant denied that he had made this admission, the credibility of the witness is for the trier of fact. *State v. Treesh* (2001), 90 Ohio St.3d 460, 472, 739 N.E.2d 749, 765–766. The trial court in fact made the following finding at trial:

"The court also finds that there's been no evidence presented that the two gentlemen on the scene that date, the Defendant and the officer, knew each other from any previous locations or dealings, and as a result the court finds the statements [*sic*] that was made by the Defendant indicating—indicated by the officer that he was doing 70 and had to be at a job site in Mentor, et cetera, were in fact made."

This admission alone was enough to prove, pursuant to Beachwood Codified Ordinances 434.03, that the defendant was operating a motor vehicle at a speed exceeding 60 m.p.h. upon a public highway.

Defendant's third assignment of error is overruled.

*Judgment is affirmed.*

ROCCO, P.J., and FRANK D. CELEBREZZE, JR., J., concur.