SEAN C. GALLAGHER, P.J.:
{¶1} Joseph Rodojev appeals his conviction for driving 15 m.p.h. over the posted speed limit. We affirm.
{¶2} A city of Brookpark police officer spotted Rodojev driving faster than the flow of traffic along the eastbound side of Interstate 480. Using an LTI 20/20 Laser Speed Detection device, the officer confirmed that Rodojev was driving 75 m.p.h. in the 60 m.p.h. zone, and the officer relayed that information to Rodojev before issuing a ticket.[1] The laser speed detection device was calibrated and working properly at the time of the stop, and the officer was certified to use it. Rodojev claims that he was in the midst of a sneezing fit that caused his nose to bleed right before the officer pulled him over. Following a bench trial, Rodojev was found guilty of speeding.
{¶3} In the first assignment of error, Rodojev claims that the trial court erred in permitting the officer to testify about the results of the laser speed measuring device without expert testimony establishing the scientific reliability of that particular device.
Background and Overview
{¶4} More than 60 years ago, the Ohio Supreme Court confirmed that the reliability of the scientific principles underlying the use of radar could be established without the need for expert testimony or the taking of judicial notice. Cleveland v. Craig , 8th Dist. Cuyahoga No. 99619, 2013-Ohio-5742, 2013 WL 6857990, ¶¶ 14-27 (providing an in-depth review of the history of radar speed measuring devices in the law), citing E. Cleveland v. Ferell , 168 Ohio St. 298, 154 N.E.2d 630 (1958). As the Ferell standard evolved, Ohio courts began considering expert evidence or judicial notice of the scientific reliability of speed measuring devices as required to sustain a conviction. Id. at ¶ 16.
{¶5} In Cleveland v. Tisdale , 8th Dist. Cuyahoga No. 89877, 2008-Ohio-2807, 2008 WL 2346440, it was concluded that Ferell stood for the proposition that the accuracy of the particular device, as it pertained to the sufficiency of the evidence, was established with evidence of the proper calibration and the qualifications of the person *178 using the device, but the general reliability of the radar speed measuring device, which pertained to the admissibility of the evidence and not the sufficiency of the evidence, was established by Ferell . The admissibility analysis in Ferell originates with Wigmore's The Science of Judicial Proof . Ferell . That analysis, however, was supplanted by the codification of the Rules of Evidence. The admissibility of scientific evidence in Ohio is governed by Evid.R. 402, 403, and 702. State v. Williams , 4 Ohio St.3d 53, 446 N.E.2d 444 (1983), syllabus; State v. Clinton , 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 152 (under Evid.R. 702, scientific evidence must be deemed relevant and reliable in order to be admitted into evidence).
{¶6} In addition to admissibility concerns, Evid.R. 103(A)(1) provides that no error may be based on the admission of evidence unless the substantial right of the complaining party is affected and a timely objection or motion to strike appears in the record. Id. ; Ford v. Sunbridge Care Ents. , 2016-Ohio-1122, 62 N.E.3d 609, ¶ 16 (8th Dist.). And, under Crim.R. 12(C)(3), a defendant who does not challenge the admissibility of certain scientific test results through a pretrial motion to suppress waives any requirement for the state to lay a foundation for the scientific reliability of the test results at trial. State v. French , 72 Ohio St.3d 446, 451, 650 N.E.2d 887 (1995). Further, the failure to object to the admissibility of evidence at trial waives all but plain error. Plain error, however, is not to be invoked except in the "utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." (Emphasis sic.) State v. Rogers , 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23.
{¶7} Despite the advent of the Rules of Evidence, courts default to the common-law analysis developed in Ferell with respect to determining the admissibility of the results of a speed measuring device. Compare State v. Clark , 101 Ohio App.3d 389, 416, 655 N.E.2d 795 (8th Dist.1995) (witness permitted to use computer-generated simulations at trial under Evid.R. 702 because the simulations were reliable and generally accepted). If we applied the Rules of Evidence to this case, the inquiry would be at an end - Rodojev failed to object to the general scientific reliability of the laser speed measuring device. The absence of the foundational evidence in the record is directly a result of his failure to timely object. Nevertheless, we acknowledge that the weight of authority in Ohio is to apply the Ferell principles and analysis with respect to the admissibility of the results from a speed measuring device.
{¶8} In no other context is the legal analysis so outdated. For example, in the early 1990s, courts began considering the admissibility of DNA evidence. State v. Pierce , 64 Ohio St.3d 490, 597 N.E.2d 107 (1992). The admissibility of DNA evidence hinged not on Wigmore's trial guide, but upon the framework provided by the Rules of Evidence. Id. Within a decade after the first decision permitting the admission of DNA evidence, the scientific principles became so widely accepted that the proponent no longer needed expert testimony to establish the reliability of the scientific principles underlying the DNA testing procedures or devices used in the process in order to deem the results of the testing admissible for trial. State v. Adams , 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 80 ; State v. Luckett , 144 Ohio App.3d 648, 651, 761 N.E.2d 105 (8th Dist.2001), fn. 3.
{¶9} We cannot help but compare the judiciary's quick acceptance of DNA testing under the Rules of Evidence with the decades-long refusal to recognize the reliability *179 of the scientific principles underlying a laser or radar speed measuring device. At some point, courts need to recognize what the general public commonly accepts: the scientific process underlying radar and laser speed measuring devices is scientifically reliable and accurate.
Plain Error: Foundation for Admissibility vs. Sufficiency of the Evidence
{¶10} Rodojev did not object to the officer's reliance on the laser speed measuring device during the trial court proceedings. Rodojev instead argued that the device was improperly used, but that is a different issue that goes to the weight of the evidence, not its admissibility. Adams at ¶ 80. As such, the trial court was not required to sua sponte conduct a preliminary hearing under Evid.R. 104 to accept the scientific reliability of mechanical or electronic instruments upon which witnesses may rely. Shaker Hts. v. Coustillac , 141 Ohio App.3d 349, 351, 750 N.E.2d 1229 (8th Dist.2001) (defendant waived any error with respect to the reliability and accuracy of the laser speed measuring device by failing to file a motion to suppress or objecting to the testimony); Craig , 8th Dist. Cuyahoga No. 99619, 2013-Ohio-5742, at ¶ 28. Rodojev forfeited all but plain error by failing to object to the admissibility of the officer's testimony. Id. Rodojev has not demonstrated, let alone argued, that a manifest miscarriage of justice occurred. App.R. 16(A)(7).
{¶11} We acknowledge that some appellate panels, including ones in this district, have concluded that the lack of expert foundation for a speed measuring device constitutes plain error implicating the sufficiency of the evidence. See, e.g., In re Z.E.N. , 4th Dist. Scioto, 2018-Ohio-2208, 114 N.E.3d 594, ¶ 22, citing State v. Cleavenger , 2018-Ohio-446, 93 N.E.3d 1027, ¶ 2 (2d Dist.) ; see also Beachwood v. Joyner , 2012-Ohio-5884, 984 N.E.2d 388, ¶ 19 (8th Dist.) ; but see Coustillac . This conclusion is contrary to the generally accepted proposition that if evidence at trial is deemed inadmissible upon appeal, the remedy is to remand for a new trial. See, e.g., State v. Curry , 43 Ohio St.2d 66, 74, 330 N.E.2d 720 (1975) (the admission of evidence was prejudicial error and defendant was entitled to a new trial). Further, the decisions finding that the lack of the foundation goes to the sufficiency of the evidence is contrary to Ferell .
{¶12} In reviewing the requirement to present expert testimony regarding the reliability of a speed measuring device, the Ohio Supreme Court held that "readings of a radar speed meter may be accepted in evidence * * * without the necessity of offering expert testimony as to the scientific principles underlying them." Ferell , 168 Ohio St. at 303, 154 N.E.2d 630. If there is no need to offer expert testimony regarding the scientific reliability of the speed measuring device, then it stands to follow that there is no need for a court to take judicial notice of the same. Notwithstanding the obviation of the expert or judicial notice requirement, the Ohio Supreme Court recognized that a determination still needed to be made "as to the sufficiency of the evidence concerning the accuracy of the particular speed meter involved in the instant case and the qualifications of the person using it." Id. In Ferell , it was concluded that the state presented sufficient evidence of the accuracy of the particular device by presenting evidence that the device was calibrated on the day of its use and the officer was qualified to use the device. Id. at 303, 154 N.E.2d 630.
{¶13} Thus, the Ohio Supreme Court separated the scientific reliability of the technology from the sufficiency analysis. State v. Bonar , 40 Ohio App.2d 360, 363, 319 N.E.2d 388 (7th Dist.1973) (holding that evidence that the equipment was *180 properly set up and in working order and the operator was qualified to use the device implicates the sufficiency of the evidence). The scientific reliability inquiry is necessary to determine whether the results of the device are admissible, whereas the calibration and user certification and use issues weigh on the sufficiency analysis. This differentiation has been maintained following the codification of the Ohio Rules of Evidence. Miller v. Bike Athletic Co. , 80 Ohio St.3d 607, 611, 687 N.E.2d 735 (1998).
Scientific Reliability of the Individual Device
{¶14} Even if Rodojev had objected to the officer's reliance on the laser speed measuring device in this case, we would find no error. The gist of Rodojev's claim is that each iteration of a speed measuring device must be individually deemed reliable before a court can permit the witness to testify regarding the device's results, and implicitly, the trial court's failure to sua sponte raise the admissibility issue is per se error requiring the immediate dismissal of all charges. Generally speaking, the proponent of a witness whose testimony relies on a technological device is not required to demonstrate the scientific reliability of each iteration of that device or scientific procedure.
{¶15} For example, in State v. Wiest , 1st Dist. Hamilton No. C-070609, 2008-Ohio-1433, 2008 WL 821801, ¶ 12, the defendant argued that the trial court erred by taking judicial notice of the reliability of the scientific principle underlying the LTI 20-20 laser device because the specific model being used had not withstood judicial scrutiny. Id. at ¶ 12. That argument was rejected. Id. The court concluded that it is the scientific principle underlying a device's reliability that is judicially tested, not the scientific reliability of a specific model. Id. , citing Ferell , 168 Ohio St. 298, 154 N.E.2d 630. Once the threshold reliability of the scientific concept underlying the particular testing methodology has been judicially vetted, defendants cannot force the state to reestablish the admissibility in each and every case involving updated versions of the device that rely on the same overarching scientific principle. Any challenges to the individual scientific procedures address the weight of the evidence, not its admissibility. Adams , 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, at ¶ 80.
{¶16} For unknown reasons, speed measuring devices are treated as the exception to this general rule that the scientific principle, as opposed to the specific device, is the focus when addressing admissibility concerns. State v. Starks , 196 Ohio App.3d 589, 2011-Ohio-2344, 964 N.E.2d 1058, ¶ 25 (12th Dist.) ("Although the underlying principles of laser technology may be the same from one device to another, generally judicial notice as to the reliability of a speed-measuring device is device specific"). For instance, in Joyner , 2012-Ohio-5884, 984 N.E.2d 388, at ¶ 14 (8th Dist.), it was concluded that although the scientific reliability of radar speed measuring devices had been established in principle, it was not established for the particular device the officer used in that particular case. Id. ; contra Cleveland Hts. v. Bartell , 8th Dist. Cuyahoga No. 51719, 1987 WL 6815, at 3 (Feb. 19, 1987) (expert testimony is no longer required in cases involving any stationary radar units). Accordingly, the panel concluded that the trial court committed per se error in permitting the officer to testify without the trial court requiring the state to call an expert to demonstrate the reliability of the particular radar device - the trial court had taken judicial notice of the scientific reliability of radar-based speed measuring *181 devices. Id., citing Moreland Hills v. Gazdak , 49 Ohio App.3d 22, 550 N.E.2d 203 (8th Dist.1988), paragraph two of the syllabus ("Judicial notice of the accuracy of a specific model of radar device cannot automatically be extended to warrant judicial notice of the accuracy of another model of radar device in another case."); State v. Reavis , 5th Dist. Morrow No. 2012-CA-0003, 2012-Ohio-4675, 2012 WL 4798776, ¶ 3 ("absent expert testimony or judicial notice, [the trial court] could not admit evidence of the construction, reliability, accuracy and mode of operation of this device"); State v. Freitag , 9th Dist. Wayne No. 07CA0082, 2008-Ohio-6573, 2008 WL 5205203 (trial court could not rely on other case that it heard for purpose of establishing the scientific reliability of the Genesis radar unit at issue because the state failed to identify at trial what specific version of the Genesis radar was used to record the defendant's speed); Cincinnati v. Levine , 158 Ohio App.3d 657, 2004-Ohio-5992, 821 N.E.2d 613, ¶¶ 12-13 (1st Dist.) (Absent expert testimony, the trial court could not take judicial notice of the LTI 20-20's accuracy and dependability, as well as hear testimony concerning any reading obtained from such a device.); State v. Saphire , 2d Dist. Greene No. 2000 CA 39, 2000 WL 1803852 (Dec. 8, 2000) ; State v. Kirkland , 3d Dist. Logan No. 8-97-22, 1998 WL 126849 (Mar. 2, 1998) ; State v. Schroeder , 11th Dist. Geauga No. 95-G-1907, 1995 WL 787423 (Sept. 8, 1995).
{¶17} The judiciary cannot keep having this debate with the introduction of every new model of radar and laser speed measuring devices, nor would we be the first to recognize the inherent reliability of modern speed measuring devices. See, e.g., State v. Cleavenger , 2018-Ohio-446, 93 N.E.3d 1027, ¶ 34 (7th Dist.) (holding that expert testimony is not required as foundation for the admissibility of radar speed measuring devices under Ferell ). For years, the unnecessary focus on the reliability of each specific device for admissibility purposes, instead of recognizing the underlying reliability of radar or laser technology being used to capture speed, has been questioned. Craig , 8th Dist. Cuyahoga No. 99619, 2013-Ohio-5742, at ¶ 21 ; Freitag at ¶ 25 (Whitmore, J., dissenting). We need not rehash those arguments today.
Application of Ferell to Laser Speed Measuring Technology
{¶18} Even if we accepted the premise that the common law principles set forth in Ferell controlled over the Rules of Evidence, it suffices that given the state of technology, it does not strain credulity that a hand-held machine is capable of emitting a focused beam of light or radio wave, capturing the reflected medium multiple times over fractions of a second, and providing the speed at which the object is traveling based on simple mathematical calculations conducted by the computer within the device. These general principles were established over 20 years ago when laser speed measuring devices were first introduced into police operations. People v. Mann , 397 Ill.App.3d 767, 770, 337 Ill.Dec. 410, 922 N.E.2d 533 (2010), citing Goldstein v. State , 339 Md. 563, 664 A.2d 375 (1995). Those same principles were established for much longer if one considers that laser speed measuring devices employ the same scientific principles used in radar-based measuring devices, the only difference being laser uses light whereas radar uses radio waves. Id. ,see also Ferell at syllabus.
{¶19} In 1999, one New Jersey court subjected the laser speed measuring devices to a rigorous testing concluding that the laser technology performed "accurately and reliably during extensive closed-track and highway testing."
*182 Mann at 771, 337 Ill.Dec. 410, 922 N.E.2d 533, citing In re Admissibility of Motor Vehicle Speed Readings Produced by the LTI Marksman 20-20 Laser Speed Detection Sys. , 314 N.J.Super. 233, 714 A.2d 381 (Law Div.1998). Twenty years later the judiciary is mired in the same admissibility debate regarding laser technology, which has been ongoing since the 1960s with respect to radar. No one has ever presented evidence that the scientific principles underlying speed measuring technology are inherently unreliable. Instead, the primary focus is on user or calibration errors. Those concerns, however, address the weight of the evidence, not its admissibility. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29.
{¶20} Lost in this debate is the origin of the scientific reliability inquiry. The test of scientific reliability requires a review of the general scientific process used by the device, not a review of the individual products employing the process. Mann , citing Goldstein ; see also Columbus v. Bell , 10th Dist. Franklin No. 09AP-1012, 2010-Ohio-2908, 2010 WL 2555108, ¶ 17 (recognizing that the scientific principle underlying a device's reliability does not extend to each version or model of the device). It is for this reason that no one seriously contests the admissibility of computations completed on calculators or other computers, GPS tracking systems, or measurements produced by digital scales or Google Mapping distance calculations. As the Ohio Supreme Court noted in Ferell , readings from speed measuring devices may be accepted into evidence just as photographs or X-rays are accepted without the need to establish the scientific reliability of each new model of the device that captures the images. Ferell , 168 Ohio St. at 303, 154 N.E.2d 630. Despite the Ohio Supreme Court's holding, appellate courts still differentiate between the individual devices, requiring the trial court to conduct its own inquiry into the reliability of an individual speed measuring device relied on by a fact witness. See, e.g., Joyner, 2012-Ohio-5884, 984 N.E.2d 388.
{¶21} As another court observed nearly a decade ago with respect to laser technology, reviewing courts from several states have held as a matter of law that speed measurements from laser devices are admissible without taking judicial notice or requiring scientific evidence of the laser's reliability. Id. , State v. Stoa , 112 Haw. 260, 266-269, 145 P.3d 803, 809-811 (App.2006), overruled in part on other grounds , State v. Assaye , 121 Haw. 204, 216 P.3d 1227 (2009) ; State v. Williamson , 144 Idaho 597, 166 P.3d 387 (2007) ; Jury v. State Dept. , 114 Wash.App. 726, 60 P.3d 615 (2002) ; People v. DePass , 165 Misc.2d 217, 629 N.Y.S.2d 367 (1995) ; see also State v. de Macedo Soares , 2011 VT 56, 190 Vt. 549, 26 A.3d 37, ¶ 10 ; Williamson at 389-390 ; Columbus v. Barton , 106 Ohio Misc.2d 17, 733 N.E.2d 326, 327 (M.C.1994). Although the reliability of the speed measuring device was beyond reproach, according to those courts, the defendant could challenge the use of the device in the particular case, challenging such things as the user's qualifications and the device's calibration, among other relevant factors. Id.
{¶22} In Ferell , the Ohio Supreme Court considered whether expert testimony was required to establish the reliability of the scientific principles involved in radar speed detection. The court recognized that there was a developing realization by courts that such expert testimony was no longer required, and the Ohio Supreme Court quoted with approval a passage from a New York case as follows: " 'We think the time has come when we may recognize the general reliability of the radar speed meter as a device for measuring the speed of a moving vehicle, and that it *183 will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying it.' " Id. at 303, 154 N.E.2d 630, quoting People v. Magri , 3 N.Y.2d 562, 170 N.Y.S.2d 335, 147 N.E.2d 728 (1958). The Ohio Supreme Court refused to draw a distinction between the particular device at issue and radar technology in general terms. Id.
{¶23} The principle underlying Ferell should be applied to laser-based speed measuring devices that rely on the same scientific principle underlying the radar-based technology. As courts have recognized,
"[t]he theory underlying the LTI 20-20 would be familiar to any student of high school physics." * * * [L]aser speed devices operate on the same principle as military radar, which determines distance and changes in distance over time (i.e., speed) by transmitting pulses of microwaves and "measur[ing] the time it takes for a pulse to reach the target and for its echo to return."
Mann , quoting Goldstein , 339 Md. at 571-572, 664 A.2d 375, citing 1 McCormick on Evidence, Section 204, at 880 n.17 (J. Strong 4th Ed.1992). Expert testimony on the scientific principles involved in speed detection should no longer be required for modern laser or radar measuring devices that work on the same principles deemed scientifically established in Ferell over 60 years ago.
{¶24} Numerous jurisdictions from around the country have adopted a similar approach as Ferell with respect to laser devices. Dist. of Columbia v. Chatilovicz , D.C. Super. Ct. No. 2006-CTF-2633, 2008 WL 2914324 (Apr. 29, 2008) (collecting cases from around the country adopting similar standards as set forth in Ferell for laser speed measuring devices). "[I]n one way or another all jurisdictions seem to require evidence that the operator of the device was qualified to operate it, the device was properly maintained and that the device was used correctly." Id. at 54. This should be the extent of the analysis. There is no serious contention that the scientific principles underlying laser speed measuring devices are invalid or born from junk science.
{¶25} Although the law will never be at the forefront of technological advances, at a minimum, it should not be hampered by outdated legal analysis. It suffices, on the basis of the foregoing discussion, that Rodojev has not demonstrated the existence of plain error in the admission of the officer's testimony. The first assignment of error is overruled.
{¶26} Nevertheless, we would suggest the Supreme Court of Ohio take this case and determine whether the admissibility of any speed measuring device hinges on the use of either expert testimony or judicial notice establishing the scientific reliability of the science used by the devices in general. It has been 60 years since the Supreme Court of Ohio has spoken on this issue. With the increased use and dependence on technology and the introduction of new devices in this area of law enforcement and the predominance of appellate decisions requiring scientific foundation for the admissibility issue, Supreme Court review is long overdue.
{¶27} To this end, we sua sponte certify a conflict between the analysis in our decision and State v. Cleavenger , 2018-Ohio-446, 93 N.E.3d 1027, ¶ 34 (7th Dist.), and that of In re Z.E.N. , 4th Dist. Scioto, 2018-Ohio-2208, 114 N.E.3d 594, on the following issue: whether the results of any speed measuring device, using either radar or laser technology, is admissible without expert testimony establishing, or the taking of judicial notice of, the scientific reliability *184 of the principles underlying the technology.[2] An affirmative answer to that question would not relieve the state of producing evidence of the officer's qualifications and the device's calibration in speed cases. We note that our sua sponte decision to certify a conflict does not relieve the parties of the burden to follow all Supreme Court procedural rules governing the filing of appeals on certified conflicts.
Remaining Issues
{¶28} In the second assignment of error, Rodojev claims that the prosecutor failed to timely produce "vital information" according to a subpoena issued before trial. We summarily overrule the argument. According to the transcript of the hearing, the city produced the requested information at the hearing, which was the date for compliance established in the subpoena, and the city provided Rodojev with a copy of the requested information - the officer's certification to operate the speed measuring device. There is no error, plain or otherwise.
{¶29} In the third and final assignment of error, Rodojev claims the police officer was not certified to operate the particular laser speed measuring device used on the day Rodojev was issued the speeding citation. According to Rodojev, the officer was certified in 2002, nine years before the particular device was first on the market. Rodojev, although offered the certification during the trial proceedings, did not object or present an argument regarding the difference between the certification and the particular device. We find no plain error given the limited discussion presented in this appeal. Rogers, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860 ; App.R. 16(A)(7). In addition, nothing in the record indicates or suggests that the officer's certification expired or did not otherwise apply to the particular device used to capture Rodojev's speed.
{¶30} We affirm.
ANITA LASTER MAYS, J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY

For the first time at oral argument, Rodojev claimed that the evidence was insufficient to sustain the conviction for driving 75 m.p.h. in a 60 m.p.h. zone because the officer testified that Rodojev was driving 70 m.p.h. We cannot consider this claim because it was not included in the appellate briefing, and because of that omission, the city was not afforded the opportunity to present a response. App.R. 16(A)(7).

We acknowledge the apparent disparity between our decision and Joyner , 2012-Ohio-5884, 984 N.E.2d 388, ¶ 19 (8th Dist.). Joyner held that the trial court incorrectly took judicial notice of a particular moving radar speed measuring device that had not been judicially vetted. Id. at ¶ 15. In this case, we are declining to find the existence of plain error based on Rodojev's failure to object to the officer's testimony, given the split of authority on the admissibility of speed measuring devices in general and the lack of arguments presented in the appellant's briefing. En banc review is not favored, but when undertaken, must be on a dispositive issue. Although the cases in general involve moving violations, the particular procedural and factual history of the cases are distinct.