[Cite as *State v. Freed*, 2020-Ohio-655.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JONATHAN D. FREED | : | Case No. 2019 CA 00018 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Municpal Court,
                                                        Case No. TRD1900794

JUDGMENT:                                     Affirmed

DATE OF JUDGMENT:                     February 21, 2020

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

JOSEPH M. SABO                            JONATHAN D. FREED
136 West Main Street                        429 Fallriver Drive
P.O. Box 1008                                   Reynoldsburg, OH  43068
Lancaster, OH  43130

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Jonathan D. Freed appeals the May 27, 2019 judgment of conviction and sentence of the Fairfield County Municipal Court, Lancaster, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On January 28, 2019, Trooper Cummins of the Ohio State Highway Patrol was parked in a driveway on Columbus-Lancaster Road, also known as Business Route 33A, just north of Coonpath Road. Cummins was monitoring traffic. His attention was drawn to a Toyota minivan, driven by appellant. Cummins is trained in the visual estimation of speed and visually estimated appellant was traveling faster than the posted speed limit of 55 miles per hour, estimating approximately 67 miles per hour. Cummins then used a laser speed measuring tool to verify appellants speed. Per the laser tool, appellant was traveling at 68 miles per hour. Cummins initiated a traffic stop and cited appellant for speeding in violation of R.C. 4511.21(D)(1). Cummins provided appellant with an arraignment date of February 12, 2018.

{¶ 3}   On January 29, 2019, appellant, proceeding pro se, filed a motion to dismiss arguing the complaint was defective, failing to plead all elements of a violation of R.C. 4511.21(D)(1), and further was not "made upon oath before any person authorized by law to administer oaths." Appellant argued therefore the complaint was invalid and the trial court was without jurisdiction over the matter.

{¶ 4}   On February 6, 2019, appellant filed an objection pursuant to R.C. 2937.21, objecting to the trial court's continuance and the delay in ruling on his motion to dismiss. The same day, he filed a demand for discovery.

{¶ 5}  Appellant appeared at his arraignment on February 12, 2019 as scheduled and objected to the proceeding. When appellant asked the magistrate to rule on his motions, the magistrate explained appellant was present for arraignment, not trial and entered a not guilty plea on appellant's behalf. A motions hearing was set for March 5, 2019.

{¶ 6}  Following his arraignment, appellant filed a "Def's Motion for R.C. 2937.21 Discharge Forthwith," and "Def's Objections and Req For Findings of Fact and Conclusions of Law."

{¶ 7}  At the March 5 motions hearing, the trial court found the magistrate was not required to rule on appellant's motions, that R.C. 2937.21 was inapplicable to the proceedings, and the court was not required to address appellant's filings within 10 days. The trial court further found the balance of the matters raised in appellant's motions pertained to matters of fact to be decided at trial.

{¶ 8}  A trial to the court was held on March 27, 2019. Appellant proceeded pro se.

{¶ 9}  The state presented one witness, Trooper Cummins. Cummins testified that when he confirmed appellant was traveling over the posted speed limit of 55 miles per hour, he was using an Ultralyte LTI 20/20 laser, the laser tool of choice for the Ohio State Highway Patrol. Cummins stated he is trained and certified in the use of the laser and explained there is no difference between models of laser detectors as far as the underlying technology is concerned. Although some have advanced features for use in inclement weather, there is no difference model-to-model as to how speed is detected.

{¶ 10} Cummins also confirmed that he performs a calibration check of his laser both before and after his shift, each and every shift. He completed the appropriate checks

on the day in question, and the laser detector was functioning properly. The state asked the trial court to take judicial notice of the reliability of the Ultralyte LTI 20/20 per *State v. Michael King*, Fairfield County Municipal Court Number 92TRC10101. Appellant objected stating there was no evidence that Cummins was using the same model and series as that involved in the *King* case. The state responded that Cummins testified the underlying technology has not changed since 1992. The trial court overruled appellant's objection pursuant to Evid.R. 201(b)(1), finding the accuracy of the Ultralyte LTI 20/20 is a fact generally known within the territorial jurisdiction of the trial court of fact.

{¶ 11} On cross-examination, Cummins further explained he knew the laser was accurate that day due to its self-calibration, the fact that it displayed no error messages, and the additional fact that he conducted his field checks as required both before and after his shift.

{¶ 12} After the state rested, appellant made a Crim.R 29 motion for acquittal which the trial court denied. Appellant then made a brief statement on his own behalf and rested. The trial court found appellant guilty. The trial court fined appellant $100 and suspended $50.

{¶ 13} Appellant filed an appeal, and the matter is now before this court for consideration. He raises six assignments of error as follow:

I

{¶ 14} "THE MUNICIPAL COURT JUDGE ERRED TO THE APPELLANT'S DETRIMENT AND DEMONSTRATED HIS MISUNDERSTANDING OF LAW BY SAYING HE WOULD DETERMINE "WHETHER OR NOT THE POSTED SPEED LIMIT WAS 55 MILES PER HOUR, WHETHER OR NOT YOU WERE INDEED EXCEEDING THE POSTED SPEED LIMIT, AND IF YOU WERE, BY HOW  MUCH", AND, BY ALL

INDICATIONS, DOING EXACTLY THAT AND NO MORE, EVEN THOUGH OHIO'S LEGISLATIVE SERVICE COMMISSION, LEADING ATTORNEYS, AND COURTS FROM OUR OHIO SUPREME COURT ON DOWN HAVE AGREED ON SUBSTANTIALLY SIMILAR VARIATIONS OF THIS: A SPEED LIMIT IS DETERMINED "*NOT BY SPEED LIMIT SIGNAGE*", AND A PROSECUTOR'S OFFICE "CANNOT … CLAIM THAT IT CAN ENFORCE WHATEVER SPEED LIMIT IS POSTED IN THE AREA, AS OHIO LAW DICTATES THE REQUIRED SPEED LIMIT ON HIGHWAYS"; THIS FIFTH DISTRICT COURT'S ULTIMATE DECISION IN *STATE V. CASS*, 2018-OHIO-4405, APPEARS TO BE CORRECT GIVEN CASS'S SPEED (83-84 MPH), BUT THERE IS A CONFLICT BETWEEN OTHER COURTS AND THIS COURT'S APPARENT REASONING, WHICH WAS, APPARENTLY, THE SAME AS THE JUDGE'S:  THAT A POSTED SPEED LIMIT IS SUFFICIENT EVIDENCE BY ITSELF OF THE EXISTENCE OF CONTROLLING REGULATORY LAW."

II

{¶ 15} "IF, DESPITE ALL INDICATIONS TO THE CONTRARY, THE JUDGE BASED HIS FINDING OF A 55 MPH SPEED LIMIT ON REGULATORY LAW, THEN HE ERRED TO THE APPELLANT'S DETRIMENT BECAUSE THE ONLY PERSON WITH AUTHORITY TO MAKE SUCH LAW WAS THE DIRECTOR THE DEPARTMENT OF TRANSPORTATION PURSUANT TO R.C. 4511.21(I), AND THE DIRECTOR HAD NOT MADE SUCH LAW, AS CAN BE SEEN BY THE ABSENCE OF A SPEED LIMIT FOR THE LOCATION IN THE DIRECTOR'S *TRAFFIC RELATIONS DATABASE*, AND A LOCAL AUTHORITY COULD NOT HAVE SET ANY 55 MPH SPEED LIMIT BECAUSE THE HIGHEST LIMIT COULD HAVE SET IS 50 MPH PURSUANT TO R.C.4511.21(J)."

III

{¶ 16} "IF, DESPITE ALL INDICATION TO THE CONTRARY, THE JUDGE DID NOT BASE HIS FINDING OF A 55 MPH SPEED LIMIT SOLELY ON A POSTED SPEED LIMIT SIGN AND INSTEAD BASED IT ON THE NATURE AND CHARACTERISTICS OF THE ROADWAY OR LOCATION, THEN HE ERRED TO THE APPELLANT'S DETRIMENT BECAUSE HIS FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AFTER THE STATE'S OWN WITNESS HELPED CONFIRM THE UNDISPUTED PRESENCE OF ALL CHARACTERISTICS OF DIVISION R.C. 4511.21(B)(15) 70 MPH RURAL FREEWAY, 2 MPH FASTER THAN THE ALLEGED SPEED OF THE APPELLANT."

IV

{¶ 17} "THE JUDGE ERRED TO THE APPELLANT'S DETRIMENT BY TAKING JUDICIAL NOTICE OF THE SCIENTIFIC RELIABILITY OF THE TROOPER'S LTI ULTRALYTE 20/20 LASER DEVICE FOR MEASURING SPEED BECAUSE THE JUDGE WAS NOT "SUPPLIED WITH THE NECESSARY INFORMATION"; THE RELIABILITY WAS NOT "CAPABLE OF ACCURATE AND READY DETERMINATION BY RESORT TO [THE PURPORTED] SOURCE [] WHOSE ACCURACY CANNOT REASONABLY BE QUESTIONED" BECAUSE THE MUNICIPAL COURT'S FILE FOR THE CASE THE STATE CITED AS SOURCE CONTAINED NOTHING RELEVANT BEYOND THE MERE WORD "LASER", AND, EVEN IF THE STATE'S PURPORTED COPY OF THE CASE DECISION IS ACCEPTED AS AUTHENTIC DESPITE IT NOT BEING IN THAT FILE THE DECISION REQUIRES FOUR "SANITY CHECKS" TO BE SUCCESSFULLY

COMPLETED BEFORE THERE IS BASIS FOR SUCH JUDICIAL NOTICE, AND THE TROOPER DID NOT COMPLETE ANY MORE THAN TWO."

V

{¶ 18} "THE MAGISTRATE AND THEN THE JUDGE ERRED TO THE HARMFUL DETRIMENT OF THE APPELLANT BY FAILING TO GIVE THE APPELLANT A MEANINGFUL OPPORTUNITY TO BE HEARD AND BY DENYING THE MOTION TO DISMISS AFTER THE STATE FAILED TO CHARGE AN OFFENSE BECAUSE IT FAILED TO ALLEGE ALL ESSENTIAL ELEMENTS OF "BASIC FACTS" COMPRISING AN OFFENSE AND THEREBY FAILED TO PROVIDE AND OHIO ART. I §10 CONSTITUTIONALLY SUFFICIENT "CAUSE", OR REASON, FOR THE ACCUSATION, BECAUSE THE STATE'S TICKET COMPLAINT LANGUAGE ABOUT WHAT WAS PRESENT ("55 MPH ZONE") AND NOT PRESENT WAS NOT EQUIVALENT TO THE STATUTE'S LANGUAGE ABOUT WHAT MUST BE PRESENT AND MUST BE ABSENT, AND WE KNOW THIS AND IT IS INDISPUTABLE BECAUSE OF ERRORS 1, 2, AND 3, AND, MOREOVER, BECAUSE "THE TEST FOR DETERMINING THE SUFFICIENCY OF A CHARGE IS WHETHER THE DEFENDANT COULD BE FOUND GUILTY OF EVERYTHING IN THE CHARGE AND STILL NOT HAVE VIOLATED THE LAW", *STATE V. BURGUN* (Ct. OF APP. CUYAHOGA CO., 1976), 49 OHIO APP. 2D 112 AT 118, AN THAT IS EXACTLY WHAT HAPPENED; A PERSON MAKING A REASONABLE ATTEMPT TO UNDERSTAND A COMPLAINT MAY REASONABLY CLAIM HE DOES NOT UNDERSTAND THE "CAUSE" OF THE ACCUSATION WHEN THERE IS NO LEGALLY SUFFICIENT CAUSE OR REASON TO CHARGE AN OFFENSE; AND THE JUDGE CONTINUED AND EXACERBATED THIS ERROR #5 BY PROCEEDING WITHOUT SUBJECT MATTER JURISDICTION TO DIRECT THE APPELLANT TO

APPEAR ON MARCH 27, 2019, WHERE THE JUDGE PROCEEDED TO CONDUCT A VOID TRIAL, AND THROUGH THAT AND AMONG OTHER COSTS, THE JUDGE COST THE APPELLANT AND HIS LATE FATHER INVALUABLE HOURS TOGETHER IN THE FINAL TWO MONTHS OF HIS FATHER'S LIFE."

VI

{¶ 19} "THE MUNICIPAL COURT ERRED TO THE APPELLANT'S DETRIMENT BY DELAYING ABOUT 14 DAYS IN BOTH ITS PROCEEDINGS AND ITS RULING ON THE APPELLANT'S MOTION TO DISMISS THE COMPLAINT AND BY BOTH REFUSING TO GRANT THE APPELLANT'S CORRESPONDING R.C.2937.21 MOTION AND BY BELIEVING THAT TRAF.R. 11 (E) HAS "SUPERSEDED" THAT SECTION WHEN, INSTEAD, THE SECTION WAS NOT MADE INEFFECTUAL BY ANY TRAFFIC RULE AND THE SUPREME COURT'S CORRESPONDING AUTHORITY UNDER OUR OHIO CONSTITUTION'S ARTICLE IV, SECTION 5(B), BECAUSE THE SUPREME COURT HAS NOT FILED THE TRAFFIC RULES WITH THE GENERAL ASSEMBLY PURSUANT TO THAT SECTION 5(B) BUT HAS INSTEAD AS IT HAS EVEN EXPRESSED IN TRAF.R. 1(B), ONLY "PROMULGATED [THE TRAFFIC RULES] PURSUANT TO THE AUTHORITY GRANTED THE SUPREME COURT BY R.C.2935.17 AND 2937.46", AND DIVISION (A) OF THAT LETTER SECTIONS, 2937.46 ("[U}NIFORM RULES FOR PRACTICE AND PROCEDURE IN TRAFFIC CASES"), DOES NOT PERMIT RULES TO "SUPERCEDE" STATUTORY LAW BY INSTEAD AND EXPRESSLY ONLY PERMITS TRAFFIC RULES "NOT INCONSISTENT WITH THE PROVISIONS OF CHAPTER 2937 OF THE REVISED CODE", AND THE JUDGE EXACERBATED THIS ERROR BY PROCEEDING THROUGH SUBSEQUENT PROCEEDINGS."

INITIAL MATTERS

{¶ 20} Appellant has filed his appeal pro se. Pro se appellants, however, like members of the bar, are required to comply with the rules of practice and procedure. *Hardy v. Belmont Correctional Inst.*, 10th Dist. No. 06AP-116, 2006-Ohio-3316, ¶ 9. Although we will ordinarily indulge a pro se litigant when there is some semblance of compliance with the appellate rules, we may not consider that which is outside the record. "A reviewing court cannot add matter to the record before it that was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978). In other words, new material and factual assertions contained in any brief before this court may not be considered. *Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 16. We therefore decline to consider appellant's references to matters outside the record.

{¶ 21} Moreover, Local Rule 9 (B) states:

{¶ 22} "Length of Briefs. In addition to the requirements of App.R. 16, no brief by any party in an appeal or original action, excluding appendices, table of contents, table of cases, statement of assignments of errors, and statement of the issues shall exceed thirty pages, unless, upon a motion requesting an increase of a specific number of pages and the showing of good cause, this Court orders otherwise. No reply brief shall exceed fifteen pages."

{¶ 23} Appellant has exceeded these limits without leave of the court. We therefore will not consider pages 39 and 40 of appellant's brief, nor pages 16-27 of his reply brief.

I, II, III

{¶ 24} We address appellant's first three assignments of error together, as they are interrelated. Within these assignments of error, appellant argues that the characteristics of Route 33(A) dictate a speed of 70 miles per hour rather than the posted 55 miles per hour limit, that the Department of Transportation (DOT) has not made the speed limit on Business Route 33(A) 55 miles per hour, and any finding that the speed limit on Business Route 33(A) is 55 miles per hour is against the manifest weight of the evidence. We disagree.

{¶ 25} Appellant was convicted of speeding in violation of R.C. 4511.21(D)(1). That section states:

> (D) No person shall operate a motor vehicle, trackless trolley, or streetcar upon a street or highway as follows:
>
> (1) At a speed exceeding fifty-five miles per hour, except upon a two-lane state route as provided in division (B)(10) of this section and upon a highway, expressway, or freeway as provided in divisions (B)(12), (13), (14), and (16) of this section;
>
> * * *

{¶ 26} Sections B(10), B(12)-(14) and B(16) state:

> (B) It is prima-facie lawful, in the absence of a lower limit declared or established pursuant to this section by the director of transportation or local authorities, for the operator of a motor vehicle, trackless trolley, or streetcar to operate the same at a speed not exceeding the following:

* * *

(10) Sixty miles per hour on two-lane state routes outside municipal corporations as established by the director under division (H)(2) of this section;

* * *

(12) Sixty miles per hour on rural expressways with traffic control signals and on all portions of rural divided highways, except as provided in divisions (B)(13) and (14) of this section;

(13) Sixty-five miles per hour on all rural expressways without traffic control signals;

(14) Seventy miles per hour on all rural freeways;

* * *

(16) Sixty-five miles per hour on all portions of freeways or expressways without traffic control signals in urbanized areas.

{¶ 27} Here, the posted speed limit was 55 miles per hour. Appellant argues that proof that the speed limit was posted is not enough to carry the day, and rather, that the state was required to establish the nature of the roadway or the origin of the sign. We disagree.

{¶ 28} First, although appellant introduced an exhibit at trial in an attempt to demonstrate Route 33A was not listed by the DOT as having a revised speed limit which would differ from that dictated by the characteristics of the road, the trial court did not admit that exhibit into evidence, finding it irrelevant. T. 105. Further, appellant did not proffer the document for purposes of appeal, and it is therefore

not contained in the record, and not before this court. As noted above, we may not consider anything outside the record. "When the court's ruling is one excluding evidence, a party must proffer the evidence at trial to preserve the issue for appeal." *State v. Smith*, 9th Dist. Wayne No. 15AP0001, 2017-Ohio-359, ¶ 19. Moreover, based on the testimony regarding the document, it appears it was merely a printout from a website. There was no testimony to indicate it was a certified document, and appellant provided no evidence to support a finding that the information it contained it was current and reliable.

{¶ 29} Second, at some point, local or state authorities made the decision that the speed along Business Route 33(A) would be 55 miles per hour, and Trooper Cummins testified that this was indeed the posted limit in both directions. Appellant relies on *State v. Smith*, 12th Dist. Madison No. CA2006-02-006, 2006-Ohio-4829 for his argument that speed limit is not determined by signage, but rather by statute. *Smith*, however, is factually distinguishable from the matter at hand. *Smith* involved conflicting signage on the same stretch of State Route 38 approaching and leaving a small municipality. In one direction the posted speed limit was 55 miles per hour. In the other, 35 miles per hour. The appellant in *Smith* was cited for traveling 48 miles per hour in a 35 mile per hour zone heading north, when at the same spot going south, the posted speed limit was 55 miles per hour.

{¶ 30} There is no such issue here. There is no dispute here that the posted speed limit on Business Route 33(A) in both directions is 55 miles per hour.

{¶ 31} Although appellant disagrees with our decision in *State v. Cass*, 5th Dist. No. 2018CA0003, 2018-Ohio-4405, we stand by our finding in that matter, resolving a similar challenge by Cass: "In the absence of a posted speed limit, it

would seem that the state would be required to establish the nature of the roadway under R.C. 4511.21(B)(1)-(B)(17) in order to establish the prima facie lawful speed upon the roadway where the speeding violation is alleged to have occurred; however, where the speed limit is established by the director of transportation or local authorities and is posted, such a showing is unnecessary." *Cass* at ¶ 34, (Hoffman dissenting on the issue of the trial court taking judicial notice of "rural" which is not at issue here.)

{¶ 32} We therefore reject appellant's arguments that the speed limit on Business Route 33(A) is anything other than 55 miles per hour. The state's prima facie case was established based upon the posted speed limit, and appellant did not successfully rebut that presumption.

{¶ 33} Turning then to appellant's manifest weight argument, on review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 34} Given the forgoing discussion, we find the trial court as the finder of fact did not lose its way in finding appellant guilty of speeding in violation of R.C. 4511.21(D)(1).

{¶ 35} The first three assignments of error are overruled.

IV

{¶ 36} In his fourth assignment of error, appellant sets forth three arguments. First he argues the state committed a *Brady* violation by failing to provide him with the *King* case, and faults the trial court for denying him a continuance to examine the *King* case. He further argues the trial court erred in taking judicial notice of the scientific reliability of the LTI Ultralyte 20/20 laser through citation to *State v. King*, Fairfield County Municipal Case No. TRC 9210101 (April 13, 1993). We find no error.

ALLEGED DISCOVERY VIOLATION

{¶ 37} We first address appellant's argument that the state withheld exculpatory evidence when it failed to provide him with a copy of the entry from the *King* case in violation of the rule established in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady*, the state violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. See 373 U.S., at 87. The Supreme Court has explained, "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression

undermines confidence in the outcome of the trial." (Internal quotations omitted) *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), citing *United States v. Bagley* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed. 487 (1985).

{¶ 38} Appellant states the entry in *King* was exculpatory, but does not explain how. We find the *King* entry, which found the technology and scientific principals involved in the LTI 20/20 laser accurate to a reasonable degree of scientific certainty was not exculpatory. It merely establishes the reliability of laser technology. It is unlikely, therefore, that appellant would have received a different verdict had he been provided with the entry. Appellee was therefore not required to provide appellant with a copy of the entry per *Brady*, nor under the discovery rules.

CONTINUANCE

{¶ 39} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Therefore, an appellate court must not reverse a trial court's decision to deny a motion for continuance unless it finds that the trial court abused its discretion. *Id.*; *State v. Wheat*, 5th Dist. Licking App. No. 2003-CA-00057, 2004-Ohio-2088 The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 40} We find no abuse of discretion in the trial court's denial of appellant's request for a continuance. *King* stood for a simple finding of scientific reliability of

a laser speed measuring device, and appellant was in no way prejudiced by the trial court's decision to deny his motion for a continuance to research the case.

JUDICIAL NOTICE

{¶ 41} Finally, we address the issue of judicial notice of the scientific reliability of the LTI Ultralyte 20/20 laser, an issue we note is currently before the Supreme Court of Ohio on a certified conflict. *City of Brookpark v. Joseph G. Rodojev*, 2019-0056.

{¶ 42} The trial court in this matter took judicial notice of the scientific reliability of the LTI Ultralyte 20/20 laser used by Cummins pursuant to Evid.R. 201(B); "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The trial court further relied upon *King* wherein the Fairfield County Municipal Court had heard testimony establishing the scientific reliability of the LTI 20/20 laser speed-measuring device.

{¶ 43} There are generally three ways for a court to take judicial notice of the accuracy of a scientific known within the territorial jurisdiction of the court: first, "a reported municipal court decision" from that jurisdiction; second, a "reported or unreported case from the appellate district" covering that jurisdiction; or finally, the previous consideration of expert testimony regarding the device in question where the trial court notes it on the record. *State v. Cleavenger*, 2018-Ohio-446, 93 N.E.3d 1027 (7th Dist.) ¶ 18 citing *East Liverpool v. Lawson*, 7th Dist. No. 13 CO 52 2014-Ohio-5858 at ¶ 10-11; *State v. Tulugu*, 7th Dist. No. 10-MA-77, 2011-Ohio-5134 ¶ 66 (upholding the taking of judicial notice on laser device), quoting

*Columbus v. Bell*, 10th Dist. No. 09AP-1012, 2010-Ohio-2908, ¶ 14, citing *Cincinnati v. Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, 821 N.E.2d 613 (1st Dist.). The trial court here employed the third method.

{¶ 44} The issue currently before the Supreme Court of Ohio is whether the results of either a laser or radar speed measuring device should be admissible without expert testimony or the taking of judicial notice of the scientific reliability of the underlying technology. The conflict case of the Eighth District Court of Appeals in *City of Brookpark v. Rodojev*, 2018-Ohio-5028, 117 N.E.3d 175 (8th Dist.) found the reliability of laser and radar speed measuring devices that use the same underlying scientific principles previously found to be scientifically sound do not need to be revisited and reestablished in subsequent cases. The Eighth District noted that the scientific principals underlying these devices has been in existence for decades, and are broadly accepted as valid, no different than the broad acceptance of the science underlying DNA testing. Id., ¶ 8-9. The court found that rather than focusing on the broadly accepted underlying science, the focus instead should be on the qualifications of the operator of the device, the maintenance of the device, and how it was operated. *Id.* ¶ 24 citing *City of East Cleveland v. Ferell*, 168 Ohio St. 298, 154 N.E.2d 630 (1958).

{¶ 45} Like appellant in the matter at hand, Rodojev argued that each new model of a speed measuring device must individually be deemed scientifically reliable before a court can permit the witness to testify regarding the device's results. *Rodojev* ¶ 14. In its analysis, however, following an extensive discussion of the history of laser and radar speed-measuring technology and the evolution of case law surrounding the same, the Eighth District found a review of individual

products unnecessary as "[t]here is no serious contention that the scientific principles underlying laser speed measuring devices are invalid or born from junk science." *Id.* ¶ 24. We agree.

{¶ 46} Here Trooper Cummins testified he is trained in the use of laser speed detection, passed all of his training, and is certified in the use of lasers to detect speed. T. 19-20. Cummins further testified he uses his laser training each workday, multiple times a day. He conducts a daily test of the laser instrument by doing a calibration check which includes checking scope alignment and distance accuracy. He performs these checks at the beginning and end of each and every shift. T. 20-21. Cummins conducted these tests on the day in question, and used the instrument as recommended by the manufacturer. T. 86. The tool Cummins used that day is used by no one else; it is issued to him alone. He testified he knew the laser was functioning properly that day due to its self-calibration, the fact that it displayed no error messages, and the fact that he had conducted his field calibrations as required. T. 55, 59. Further, Cummins visually estimated appellant's speed before confirming the same several times with the laser tool. T. 14, 26.

{¶ 47} We therefore conclude that the trial court did not err in taking judicial notice of the scientific reliability of the laser tool, and further, that there was no need for the trial court to revisit the scientific reliability of laser technology before doing so.

{¶ 48} The fourth assignment of error is overruled.

## V

{¶ 49} In his fifth assignment of error, appellant argues the ticket issued to him by Trooper Cummins was insufficient to charge a crime as it did not contain the essential elements constituting the offense charged. We disagree.

{¶ 50} "Traffic tickets are legally sufficient if they describe the nature of the offense and refer to the statute or ordinance allegedly violated even though the description fails to allege all of the essential elements of the offense charged." *State v. Campbell*, 150 Ohio App.3d 90, 2002-Ohio-6064, 779 N.E.2d 811, ¶ 7, affirmed *State v. Campbell*, 100 Ohio St.3d 361, 2003-Ohio-6804, 800 N.E.2d 356.

{¶ 51} As discussed above, appellant was charged with a violation of R.C. violation of R.C. 4511.21(D)(1) which prohibits operating a motor vehicle, upon a street or highway at a speed exceeding fifty-five miles per hour, except upon a two-lane state route as provided in division (B)(10) of the section and upon a highway, expressway, or freeway as provided in divisions (B)(12), (13), (14), and (16) of the section.

{¶ 52} Our review of appellant's traffic citation indicates he was charged with speeding pursuant to R.C. 4511.21(D)(1) for traveling 68 miles per hour in a 55 mile per hour zone on Route 33A northbound at or near Coonpath Road, in the township of Greenfield, in the county of Fairfield. We find that all of the essential elements of the violation charged were included in the citation. The citation was sufficient to place appellant on notice that he was being charged with a certain traffic offense and what the elements of that offense were.

{¶ 53} The fifth assignment of error is overruled.

VI

{¶ 54} In his final assignment of error, appellant argues the trial court erred in failing to rule on his pre-arraignment motions within the 10-day window set forth in R.C. 2937.21, and by finding that section inapplicable to the proceedings and the Ohio Traffic Rules applicable. We disagree.

{¶ 55} This is a minor misdemeanor traffic case. Contrary to appellant's arguments, the Ohio Traffic Rules govern procedure in traffic cases. Traffic Rule 1(A) provides: (A) Applicability. These rules prescribe the procedure to be followed in all courts of this state in traffic cases and supersede the "Ohio Rules of Practice and Procedure in Traffic Cases For All Courts Inferior To Common Pleas" effective January 1, 1969, and as amended on January 4, 1971, and December 7, 1972.

{¶ 56} Ohio Traffic Rule 11(C) addresses pleadings and motions made before trial and states: (E) Ruling on Motion. A motion made before trial, other than a motion for change of venue, shall be timely determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

{¶ 57} The trial court complied with the appropriate rule in ruling on appellant's motions in a timely manner before trial. We therefore reject appellant's arguments to the contrary.

{¶ 58} The final assignment of error is overruled.

{¶ 59} Upon careful consideration of each of appellant's arguments we affirm the judgment of conviction and sentence of the Fairfield County Municipal Court.

By Wise, Earle, J.

Wise, John, P.J. and

Delaney, J. concur.